IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| SUSAN M. MANLEY, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:18-cv-00053-PWG |
| WASHINGTON ADVENTIST HOSPITAL et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan M. Manley was a registered nurse at Washington Adventist Hospital in Montgomery County, Maryland for 10 years. Compl. 7, ECF No. 1. On October 13, 2016, the hospital administration fired her, citing a string of unscheduled absences over the preceding 10 months. *See id.* at 9; Termination Report 5, ECF No. 1-4. Ms. Manley responded with this lawsuit, asserting a series of federal employment discrimination claims against the hospital, her supervisor, and various colleagues. Her Complaint also asserts a claim under a recently enacted county ordinance that aims that protects workers' rights to accrue and use "sick and safe leave."

Defendants have moved for dismissal under Rule 12(b)(5) of the Federal Rules of Civil Procedure, arguing Ms. Manley failed to properly serve them with a summons and a copy of her Complaint before the Court-ordered deadline. *See* Defs.' Mem. 3-8, ECF No. 15-2. Failing that, they say, the Court should dismiss most of her claims under Rule 12(b)(6) for failure to state a claim.

Defendants are correct that Ms. Manley failed to effect service of process before the court-ordered deadline of November 5, 2018. I choose, nevertheless, to exercise my discretion to extend the deadline. The case will proceed, but in a streamlined form, as I agree with Defendants that Ms. Manley has failed to state any claims against the individual defendants and, further, has not stated a plausible claim under the county ordinance.

## FACTUAL BACKGROUND

Ms. Manley, who is representing herself, has brought this suit against Washington Adventist Hospital and four of her colleagues on her unit: Miriam Prudente, who was the director of the unit; Elizabeth Karley and Nancy Wetmore, who were assistant directors; and Laurien Yeneberi, a "patient care tech." *See* Compl. 7-9; ECF No. 1-5. The Complaint identifies the director, Ms. Prudente, as Filipino. *See id.* at 10. It also identifies all of the individual defendants as members of the Seventh Day Adventist Church. *See id.* at 8-9. Ms. Manley herself is white and Catholic. *See id.* at 7; EEO Charge 3, ECF No. 1-1. She states that, at 62, she was the "oldest one" on the day shift. Compl. 10.

### Events Preceding Termination

Ms. Manley's Complaint is voluminous, with more than 150 pages of exhibits. Among those exhibits are several "corrective action" reports Ms. Manley received in the course of her final year and a half of employment at the hospital. An April 2015 report alleges Ms. Manley "incurred 5 unscheduled absences from January 1 to Dec. 31, 2014." Corrective Actions 9, ECF No. 1-4. An October 2015 report states, similarly, that she "incurred 5 unscheduled absences from January 1 to Oct. 1, 2015." *Id.* at 11. Ms. Manley disputes these accusations. *See* Attendance R. 14-18, ECF No. 1-2. She also asserts that a spate of tragedies between 2014 and 2016, including the

deaths of several family members, had forced her to take more time off of work during this period than she otherwise might have. *See* Compl. 7.

On January 23, 2016, Ms. Manley was unable to make it into work because of a major snowstorm. *See* Compl. 8-9. Ms. Prudente spoke with her the following week and issued another corrective action report, citing her "[f]ailure to plan for inclement weather and meet [her] responsibility of working [her] assigned shift even during inclement/hazardous weather conditions." Corrective Actions 1. The report noted that administrators had emailed the staff two days before the storm, reminding those who were scheduled to work during the storm that "it is expected they will be there" and advising them "to begin making arrangements to ensure attendance." *Id.* Ms. Prudente, who signed the report, labeled it as a "final written" warning and wrote: "Failure to report to work when scheduled will result in additional disciplinary action, up to and including termination of employment." *Id.*

Four months later, after Ms. Manley phoned in saying she "had been sick for a week," Ms. Prudente sent her an email under the heading "Unscheduled absences." ECF No. 1-4. The email, which opened with a wish for Ms. Manley's speedy recovery, counted three unscheduled absences over the preceding four months and said that, while her supervisors were "trying to be very understanding," they wanted to "make it clear that because we are stewards of the patients we serve and the people we work with, it is with extreme importance that you have to make a personal plan on how to manage your work attendance." *Id.*

The situation came to a head toward the end of that summer, when Ms. Manley requested approval for a one-week vacation in November 2016. *See* Aug.-Sept. 2016 Emails 20-21, ECF No. 1-7. Ms. Prudente hesitated to approve the request, explaining that it did not appear that Ms. Manley had enough hours of paid leave to cover it. *See id.* at 20. Ms. Manley insisted she did.

3

*See id.* A few weeks later, Ms. Manley's niece died, and Ms. Manley asked for time off to attend the funeral. *See* Compl. 7. Ms. Prudente's response, allegedly, was, "It looks like you have a lot going on[.] [A]re you going to retire?" *Id.*

Ms. Prudente issued a final corrective action report, terminating Ms. Manley's employment, on October 13, 2016, shortly after the latter took what Ms. Prudente counted as her fourth unscheduled absence since February 2016. *See* Termination Report 5.

**Procedural History**

Ms. Manley filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 10, 2017. EEO Charge. The charge accused Ms. Prudente of consistently chastising her for seeking to take time off and treating her less favorably than her coworkers. *See id.* The EEOC dismissed the claim on October 25, 2017. *See* ECF No. 1-1.

This lawsuit followed. Ms. Manley, acting without the assistance of counsel, filed the Complaint on January 5, 2018, asserting what appear to be three claims:[1] (1) racial and religious discrimination under Title VII of the Civil Rights Act of 1964, (2) age-based discrimination under the Age Discrimination in Employment Act ("ADEA"), and (3) violation of the Montgomery County Earned Sick and Safe Leave Act.

On February 15, 2018, I issued an order directing Ms. Manley to effect service on each defendant and to have the server promptly notify the Court, through an affidavit, that this has been done. ECF No. 3. The order noted that service was due 90 days after the Complaint was filed and that the failure to provide proof of service could result in the dismissal of her case. *Id.*

---

[1] Ms. Manley also checked the box marked "retaliation" on her preprinted complaint form. *See* Compl. 5. Based on the accompanying summary, though, it is not clear to me whether she intended to assert a retaliation claim and, if so, under which statute she meant to bring it.

4

I revisited this issue in an October 5, 2018 letter order, noting that Ms. Manley had not effected service within the 90-day timeframe. I reasoned, though, that a pair of motions she had filed seeking the benefit of court-appointed counsel[2] had demonstrated "good cause for the delay," and so I extended the deadline to November 5, 2018. ECF No. 7.

Ms. Manley later notified me in a letter that she effected service via certified mail on October 31, 2018. ECF No. 8. Defendants, however, countered that she had failed to request "restricted delivery" in compliance with Maryland procedural rules and, for that matter, had failed to include a copy of the Complaint. *See* ECF No. 9. Defendants also pointed out that she had not served the hospital's resident agent and that none of the individual defendants received anything until sometime after the November 5, 2018 deadline. *See id.*

Ms. Manley continued to keep me apprised of her efforts to effect service, *see* ECF No. 13, even after I approved Defendants' request to file a motion to dismiss the Complaint, *see* ECF No. 12. Defendants filed their motion on January 23, 2019. Mot. to Dismiss, ECF No. 15. Five days later, Ms. Manley filed proof that she served all five defendants via certified mail, receipt requested, on January 24, 2019. ECF No. 18.

The motion to dismiss has been fully briefed. *See* ECF Nos. 15-2, 21, 26, 27. There is no need for a hearing. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

Defendants have moved for dismissal under Rules 12(b)(5) and 12(b)(6).

Rule 12(b)(5) permits a defendant to seek dismissal for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). "Once service has been contested, the plaintiff bears the burden of

---

[2] I denied these motions, explaining that her claims were "not unduly complicated" and that she had "demonstrated the ability to articulate [her] claims." ECF No. 7.

establishing the validity of service pursuant to Rule 4." *Moseley v. Pollozzi*, No. RDB-18-1292, 2019 WL 418407, at *2 (D. Md. Feb. 1, 2019) (quoting *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016)). The "plain requirements for the means of effective service of process may not be ignored." *Curtis v. Md. Envtl. Serv.*, No. RDB-17-2728, 2018 WL 1394020, at *2 (D. Md. Mar. 19, 2018). Generally, though, "when service of process gives the defendant actual notice of the pending action, a court may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 461 (D.S.C. 2019) (quoting *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)).

Rule 12(b)(6), meanwhile, authorizes parties in a civil action to seek the dismissal of a claim or complaint on the grounds that it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 647-48, (D. Md. 2015). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Service of process is a prerequisite for litigating in federal court; without it, the court may not exercise personal jurisdiction over a defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff*

& Co., 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, --- F.3d ----, No. 2019 WL 3819311, at *12 (4th Cir. Aug. 15, 2019). Defendants' Rule 12(b)(5) motion addresses this fundamental requirement and, if successful, would dismiss this case in its entirety. It therefore seems appropriate to start there, before turning to their remaining arguments.

### Rule 12(b)(5)

Ms. Manley made numerous attempts to serve Defendants over the course of this case, and by her own admission made many mistakes along the way. She has not disputed that she failed to meet the initial deadline in April 2018. And though she argues her attempts to serve Defendants via certified mail before the extended deadline of November 5, 2018, were satisfactory, *see* Opp'n 4, ECF No. 26, it is clear that they were not. Ms. Manley chose to attempt service via certified mail, a method authorized under Maryland Rule 2-121(a)(3).[3] This rule permits service "by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery--show to whom, date, address of delivery.'" Md. Rule 2-121(a)(3). The rule specifies that service via this method "is complete upon delivery." *Id.*

Ms. Manley mailed the papers to Defendants on October 31, 2018, which, as she notes, was several days before the court-ordered deadline of November 5, 2018. But records she filed in her attempts to prove service show that the papers she sent to Ms. Wetmore and Ms. Karley were signed for on November 7 and 14, 2018, respectively, and that the expected delivery date for

---

[3] Ms. Manley has said that, in their various attempts to effect service, she and her husband were confused as to why they should be expected to comply with Maryland law, seeing as they filed this suit in federal court. *See* ECF No. 19. To explain, Rule 4 of the Federal Rules of Civil Procedure permits a plaintiff to serve a defendant in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

7

service on Ms. Prudente was not until November 21, 2018. *See* ECF No. 13-1. It is clear, then, that service on these defendants was not timely. *See* Md. Rule 2-121(a)(3). And the records do not evidence any attempt to serve either Washington Adventist Hospital's registered agent or Ms. Yeneberi before the deadline.

Under Rule 4(m), a court that finds service of process was untimely has two options: "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see United States ex rel. Moore v. Cardinal Fin. Co.*, No. CCB-12-1824, 2017 WL 1165952, at *6 (D. Md. Mar. 28, 2017) (applying Rule 4(m) after the court had twice previously extended the deadline for service). The rule further states that "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added).

Until recently, many district courts in this circuit questioned whether Fourth Circuit precedent proscribed their discretion to extend the time for service absent good cause. *See Candy v. People for Ethical Treatment of Animals, Inc.*, No. 18-2335-PX, 2018 WL 5923434, at *1 (D. Md. Nov. 13, 2018); *Bailey v. Bank of Am.*, No. ELH-16-2243, 2017 WL 1301486, at *6 (D. Md. Apr. 7, 2017). On this view, my options upon finding that service was insufficient here would be to dismiss the action without prejudice or to "enter an order asking the [plaintiff] to show cause why the claim should not be dismissed." Loc. R. 103.8.a. However, recent district court decisions have embraced the view that, since Congress amended the rule in 2015, Rule 4(m) "no longer requires a court to dismiss a complaint absent a showing of good cause." *Escalante v. Tobar Constr., Inc.*, No. 18-980-PX, 2019 WL 109369, at *4 (D. Md. Jan. 3, 2019) (quoting *Robertson v. Beacon Sales Acquisition*, No. GJH-16-3241, 2018 WL 2464455, at *3 n.7 (D. Md. May 31, 2018)); *see also, e.g., Whetstone v. Mayor & City Council of Balt. City*, No. ELH-18-738, 2019

WL 1200555, at *7 (D. Md. Mar. 13, 2019). These cases hold "it is within the Court's discretion to extend plaintiff's time to serve under Rule 4(m)." *Whetstone*, 2019 WL 1200555, at *7.

Judge Hollander's recent decision in *Whetstone v. Mayor & City Council of Baltimore City*, No. ELH-18-738, 2019 WL 1200555 (D. Md. Mar. 13, 2019), illustrates some of the considerations a court may take into account in deciding to exercise this discretion. There, the plaintiff was between 63 and 130 days late in serving the various defendants she had sued. 2019 WL 1200555, at *7. Judge Hollander did not determine, one way or the other, whether there was good cause to extend the deadline. She did note, though, that the plaintiff had attempted to effect service by the deadline; that the defendants did not assert that the delay prejudiced them; and that dismissal would likely bar the plaintiff from refiling the suit. *See id.* at *8. She opted on the basis of these considerations to exercise her discretion to extent the Rule 4(m) deadline. *Id.*

All of the same factors are present here. First, Ms. Manley attempted to effect service on most of the defendants before the November 5, 2018 deadline. Second, Defendants plainly have had actual notice of this action since at least December 21, 2018,[4] and they have not asserted that the failure to serve process on them in a timely manner has prejudiced them in any way. And, third, a dismissal under Rule 12(b)(5) would have harsh consequences for Ms. Manley, as her Title VII and ADEA claims would be statutorily barred on the ground that more than 90 days have passed since she received the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Defs.' Mem. 6 n.3.

I note, as well, that Ms. Manley did not cease her efforts to serve Defendants after they moved to dismiss her Complaint. On January 28, 2019, she filed a preprinted "Proof of Service"

---

[4] This is the date on which defense counsel filed a notice of intent to move for a dismissal under Rules 12(b)(5) and 12(b)(6). ECF No. 9.

9

form attesting that she served each of the Defendants by certified mail, return receipt requested, on January 24, 2019. ECF No. 18. And on February 22, 2019, she enclosed along with her opposition brief a receipt showing the mailing to the hospital's registered agent was marked "restricted delivery." ECF No. 21-1.

These considerations persuade me that an extension of time is appropriate under the circumstances. I choose, therefore, to exercise my discretion to extend the deadline for service once more under Rule 4(m). This decision will be of limited consequence, because, as I shortly will explain, Ms. Manley has failed to state any claims against the individual defendants, or, for that matter, any claims under the Montgomery County ordinance. It does, however, mean she will have a further opportunity to pursue her Title VII and ADEA claims against the one remaining defendant, Washington Adventist Hospital.

What remains to be settled is whether it is necessary for Ms. Manley to make one last attempt to serve process on the hospital. Defendants' reply brief does not take a position on whether her most recent attempt to serve the hospital's registered agent fulfilled her obligations under the applicable rules. *See* Reply 2 (noting only that delivery was untimely). I will note, though, that under Rule 2-124(d), service on a corporation must be made "by serving its resident agent, president, secretary, or treasurer." Md. Rule 2-124(d). Ms. Manley evidently addressed the mailing to the hospital's registered agent, but the receipt shows that someone other than the registered agent signed for it. *See* ECF No. 21-1. The question arises, then, whether service on the hospital fulfilled Ms. Manley's obligations under Maryland law.

The Court of Appeals of Maryland confronted a similar (but not identical) set of facts in *Academy of IRM v. LVI Environmental Services., Inc.*, 687 A.2d 669, 675 (Md. 1997). There, the plaintiff attempted to serve a corporation's "controller" (considered the equivalent of a treasurer)

by certified mail marked "restricted delivery." *See* 687 A.2d at 671, 674. However, exhibits enclosed with the affidavit of service showed that someone other than the controller had signed the return receipt and that the word "agent" was circled. *See id.* at 671. The Court of Appeals held that the return of service, "with its accompanying return receipt, *prima facie* evidences service of process," even though the controller had not personally signed the receipt. *Id.* at 675. The court reasoned that corporate executives are likely to authorize subordinates to sign for their registered mail and that courts could not realistically expect letter carriers to "pursue corporate executives into their inner *sancta* in order to obtain personal signatures." *Id.* Accordingly, the court stated, the burden rests on the party challenging service to demonstrate that the person whose signature appears on the return receipt lacked authority to sign for the mailing. *Id.*; *see also Monster Heavy Haulers, LLC v. Goliath Energy Servs., LLC*, 883 N.W.2d 917, 924-25 (N.D. 2016).

Were I to apply this principle here, I would find that the return receipt bearing the address of the hospital's registered agent but the signature of some other, unknown person is presumed to be adequate. I further would find that Defendants, having failed to challenge the signature in their briefing or to make a showing that the signer lacked express or implied authority to accept delivery, have not met their burden to rebut this presumption.

I recognize, though, that the holding in *Academy of IRM* rested in part on the court's observation about "general business practices" within large organizations. 687 A.2d at 675. And here, the intended recipient of Ms. Manley's mailing was not a corporate officer, but a registered agent. Accordingly, in an abundance of caution, I will regard service on Washington Adventist Hospital as incomplete and will give Ms. Manley more time to finish the task.

With that said, I remind Washington Adventist Hospital that it bears an affirmative duty under the Federal Rules "to avoid unnecessary expenses of serving the summons." Fed. R. Civ.

P. 4(d)(1). Ms. Manley retains the option of requesting a waiver, and if the hospital "fails, without good cause, to sign and return" that waiver, I will have no choice but to order the hospital to reimburse Ms. Manley for the costs of service and "reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2). Given the amount of time the parties already have spent arguing about preliminary matters (not to mention that Washington Adventist Hospital has had actual knowledge of this Complaint for a very long time), counsel for the hospital would be wise to consult with their client about its willingness to accept service, and avoid the possibility of costs under Rule 4(d)(2). In this regard, the hospital must notify Ms. Manley by September 18, 2019, whether it will accept service, and if it will not, Ms. Manley will have 30 days from that notice in which to serve it.

### Rule 12(b)(6)

I turn now to more substantive matters. Defendants' motion does not challenge all of Ms. Manley's claims on the merits. In particular, it does not assert that her Complaint fails to state a claim against the hospital under Title VII or the ADEA. It does, however, argue that the federal claims cannot be brought against the four individual defendants, and that the claim under the Montgomery County ordinance is not viable against any defendant.

Defendants are correct on both scores. First, it is well settled that "Title VII creates a cause of action against employers, not individual supervisors." *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (citing *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998)); *see Alford v. Wang, Inc.*, 11 F. Supp. 3d 584, 591 (D.S.C. 2014). The same is true of the ADEA. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994); *Lane v.*

*Lucent Techs., Inc.*, 388 F. Supp. 2d 590, 595 (M.D.N.C. 2005). Plainly, then, the federal claims against Mss. Prudente, Karley, Wetmore, and Yeneberi must be dismissed with prejudice.[5]

Ms. Manley's apparent attempt to hold Defendants liable under the Montgomery County Earned Sick and Safe Leave Act also fails.[6] The County Council enacted the ordinance in 2015 with the expressly enumerated aims of: "promot[ing] the health and welfare of County residents"; "safeguard[ing] employers and employees against unfair competition"; "increase[ing] the stability of industry in the County"; and "decreas[ing] the need for the County to spend public money for the relief of employees who also live in the County." *See* Montgomery Cty. Code § 27-76(a)(3). Under the ordinance, employees working for companies with five or more workers are entitled to accrue sick and safe leave at a rate of at least 1 hour for every 30 hours worked. See *id.* § 27-77(b). In addition, the ordinance entitles workers to use earned sick and safe leave for the following purposes:

> (1) to care for or treat the employee's mental or physical illness, injury, or condition;
> (2) to obtain preventive medical care for the employee or the employee's family member;
> (3) to care for a family member with a mental or physical illness, injury, or condition;
> (4) if the employer's place of business has closed by order of a public official due to a public health emergency;
> (5) if the school or child care center for the employee's family member is closed by order of a public official due to a public health emergency;
> (6) to care for a family member if a health official or health care provider has determined that the family member's presence in the

---

[5] The federal claims against Ms. Yeneberi, at least, would fail in any event, as the Complaint neither characterizes her as a supervisor nor alleges that she played any role in discriminating against Ms. Manley.

[6] I say "apparent" because, in truth, it is not entirely clear whether Ms. Manley intended to assert a claim under this ordinance. The Complaint simply refers to the ordinance as a "[r]elevant city or state law." Compl. 4. Nevertheless, I will assume Ms. Manley was invoking the ordinance as the basis for a claim.

> community would jeopardize the health of others because of the family member's exposure to a communicable disease;
>
> (7) for the birth of a child, or for the placement of a child with the employee for adoption or foster care;
>
> (8) to care for a newborn, newly adopted, or newly placed child within one year of birth, adoption, or placement; or
>
> (9) if the absence from work is due to domestic violence, sexual assault, or stalking committed against the employee or the employee's family member . . . .

*Id.* § 27-79(a).

I will assume, without deciding, that an employee may bring a civil action to enforce the ordinance.[7] Even then, I am at a loss to conceive of any claim Ms. Manley could bring under it. In the first place, the Act did not take effect until October 1, 2016 – just five days before the last of the alleged unscheduled absences that precipitated her termination – and was not retroactive. *See* Termination Report 5; Mongtomery Cty. Council Bill No. 60-14, §§ 2, 3 (2015), *available at* https://www.montgomerycountymd.gov/COUNCIL/Resources/Files/bill/2014/20150623_60-14A.pdf. Any sick and safe leave she might have accrued between the Act's effective date and her October 13, 2016 termination could not have amounted to much, and anyway her Complaint does not allege her employer withheld earned leave during that particular period of time.

Similarly, while one exhibit to the Complaint documents an email exchange in which Ms. Prudente suggested she would be unable to approve Ms. Manley's vacation request, that exchange predated the ordinance's effective date, *see* Aug.-Sept. 2016 Emails 20-21, and I see no allegations that any further denials occurred after the ordinance took effect. And anyway, the ordinance entitles employees to use their earned leave only for certain, expressly enumerated purposes. If,

---

[7] The Act's enforcement provision, found at Section 27-82 of the County Code, provides: "A covered employee who did not receive earned sick and safe leave in violation of this Article may file a complaint with the [Executive] Director [of the Office of Human Rights]." The Act does not itself allude to a right to bring civil lawsuits.

14

as the Complaint asserts, Ms. Manley's purpose in seeking time off during the fall of 2016 was to attend a family member's funeral, the ordinance would have been of no assistance, as mourning a relative is not among the enumerated purposes.

In sum, Ms. Manley has not stated a claim under the county ordinance. Because I find that amendment would be futile, the dismissal of this claim also will be with prejudice.

## ORDER

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendants' motion to dismiss (ECF No. 15) IS GRANTED IN PART AND DENIED IN PART as follows:

   a. the motion to dismiss all claims under Fed. R. Civ. P. 12(b)(5) for insufficient service of process is denied;

   b. the Title VII and Age Discrimination in Employment claims against Defendants Prudente, Karley, Wetmore, and Yeneberi are dismissed with prejudice; and

   c. the claims under the Montgomery County Earned Sick and Safe Leave Act are dismissed with prejudice; and

2. Defendant Washington Adventist Hospital SHALL NOTIFY Ms. Manley by September 18, 2019, whether it will accept service, and if it will not, Ms. Manley will have 30 days from that notice in which to serve it.

Date: August 30, 2019

 8/30/19
Paul W. Grimm
United States District Judge